## John T. Knight v. John Hartman.

*Land contract—Possession of premises—Tenancy at will—Notice—Summary proceedings.*

1. January 30, 1888, the defendant and his wife deeded 80 acres of land to two of plaintiff's brothers, who, on the same day, sold the land to defendant on a contract, which provided for the payment of the purchase price on or before January 1, 1889, with interest payable annually on all sums unpaid *after said date.* Defendant was to have possession of the land, and the entire crop of hay, grain, fruit, and vegetables grown during the year 1888. Provision was made for an election on the part of the vendors to declare a forfeiture in case of defendant's refusal or neglect to perform his covenants. February 28, 1889, the vendors conveyed the land to the plaintiff, who, on March 25, 1889, served a notice upon the defendant of his ownership, and that defendant was in default in the performance of the covenants and conditions of the contract, for which default plaintiff declared its forfeiture. Defendant made no payments on the contract, and on April 17, 1889, plaintiff commenced proceedings under the forcible entry and detainer act to recover possession of the land, and verdict and judgment were directed in his favor. And it is held that, under the circumstances, defendant was at best a tenant at will, and could not be dispossessed without three months' notice to quit; citing How. Stat. §§ 5774, 8295 (subd. 4); that the facts are similar to those in the case of *Rawson v. Babcock,* 40 Mich. 330, and that the principle there laid down must govern this case.

2. And it is further held that it is evident from the contract that it was not intended that defendant's possession should end on default in payment, January 1, 1889, interest being provided for *after* that date, and provision being made for an election on the part of the vendors to declare a forfeiture in case defendant refused to perform his covenants; and that, by the non-exercise of such election for nearly three months, defendant became a tenant at will or by sufferance; citing *Dwight v. Cutler,* 3 Mich. 572; *Crane v. O'Reiley,* 8 Id. 312; *Allen v. Carpenter,* 15 Id. 33, 42; and, if the latter, he was entitled to a three months' notice to quit under How. Stat. § 4774.

Error to Kalamazoo. (Buck, J.) Argued June 5, 1890. Decided June 13, 1890.

Summary proceedings to recover possession of land. Defendant brings error. Reversed, and a new trial granted. The facts are stated in the opinion.

*Hawes & Luby,* for appellant, contended for the doctrine stated in the opinion, citing the authorities therein cited.

*Edwards & Stewart,* for plaintiff, contended:

1. A party in possession under a land contract containing no provisions relating to the right of possession, who holds over after forfeiture, with the assent of the vendor, is a tenant at will, and entitled to notice to quit. In this case it is not shown that defendant held over after his default with the assent of plaintiff, but, on the contrary, plaintiff declared a forfeiture of the contract soon after he purchased the land, and defendant was not a tenant at will; citing *Benfey v. Congdon,* 40 Mich. 285; *Bennett v. Robinson,* 27 Id. 32; *Ramsdell v. Maxwell,* 32 Id. 285; *Allen v. Carpenter,* 15 Id. 36, 42.

2. The agreement by which one enters into possession of land under a contract of purchase is a demise; citing *Crane v. O'Reiley,* 8 Mich. 315; and the defendant was in possession December 31, 1888, under a demise which expired on that day, after which he held over *after the time the land was demised to him,* making a case within How. Stat. § 8295 (subd. 1), which authorizes summary proceedings to regain possession without notice to quit.

3. But, further, the holding over of possession by defendant was contrary to the conditions and covenants of his contract, and within the provision of the section last cited. The earlier Michigan cases cited were under the law of 1846, which was in force until 1867, when the section cited was amended by incorporating in the first subdivision the clause "or contrary to the conditions or covenants of any executory contract for the purchase of lands or tenements." Prior to such amendment a notice to quit was necessary in such a case, but, after the amendment of the first subdivision of section 8295, the construction of the fourth subdivision was qualified and limited, as both subdivisions must be so construed as to make each operative, and yet in harmony.

4. Defendant's contract contained a covenant giving him possession until the end of the year 1888, and the case of *Rawson v. Babcock,* 40 Mich. 332, conclusively sustains our view of the

law. That was a case under a land contract which was a counterpart of the contract in this case, except that it contained no provision giving the purchaser possession.

MORSE, J. Plaintiff instituted summary proceedings to recover 80 acres of land.

January 30, 1888, the defendant and his wife deeded the land in question to William G. and Godfrey E. Knight, brothers of the plaintiff. On the same day, the Knights gave to Hartman a land contract.

It is stated by plaintiff's counsel in their brief (although it does not appear in the printed record) that the farm originally belonged to Godfrey Knight, the father of the plaintiff; that he sold to Hartman, taking back a mortgage to secure payment of purchase money, which mortgage at the time of the elder Knight's death amounted to much more than the value of the place. The deed and contract were executed in settlement of such mortgage indebtedness.

The contract provided that Hartman should pay $2,000 on or before January 1, 1889, "with interest payable annually on all sums unpaid at the rate of seven per cent. *after said date.*"

"And it is further covenanted, by and between the parties aforesaid, that on the performance of all the conditions to be done and performed at the time and manner above mentioned and specified, on the part and behalf of the said party of the second part, that the said parties of the first part shall execute a good and sufficient deed to the said party of the second part, his heirs, executors, and administrators, subject to all taxes assessed for and after this year; and, on failure and neglect of the said party of the second part to do or perform anything herein specified to be done and performed on his part, the said parties of the first part may elect to consider whether released and discharged of and from any and all liability in any of the covenants specified to be done and performed on their part, and all payments and improvements made by the said party of the second part

shall be deemed forfeited without further notice, as stipulated damages for non-performance of contract."

The only clause relating to possession was as follows:

"It is also agreed that the party of the second part [Hartman] shall have possession of the above-described lands, and the entire crop of hay, grain, fruit, and vegetables grown during the year 1888."

Hartman went into or remained in possession, but has paid nothing. February 28, 1889, William G. and Godfrey E. Knight conveyed the land to the plaintiff. March 25, 1889, the plaintiff served notice upon Hartman that he was the owner of the land, and that Hartman was in default in the performance of covenants and conditions of the contract, for which default plaintiff declared the contract of sale forfeited, and no longer of binding force.[1] Under these facts, plaintiff, under direction of the court, had verdict and judgment.

The judgment is erroneous. Under the circumstances, Hartman was at best a tenant at will, and could not be dispossessed without three months' notice to quit. How. Stat. §§ 5774,[2] 8295 (subd. 4). The court thought the case was not governed by *Rawson v. Babcock,* 40 Mich. 330, but we think the facts are similar, and that the principle there laid down must control here. See, also, *Raynor v. Haggard,* 18 Mich. 72.

It is evident from the contract that it was not intended that the possession should end on default in payment, January 1, 1889. Interest is provided for after that date, and provision was made for an election on the part of the Knights to declare a forfeiture in case Hartman neglected or refused to perform his covenants. He was allowed to remain without the exercise of such election for nearly three months, and he thereby clearly became a

[1] Plaintiff commenced this suit April 17, 1889.
[2] Amended by Act No. 162, Laws of 1885.

tenant at will or by sufferance.  *Dwight v. Cutler,* 3 Mich. 572; *Crane v. O'Reiley,* 8 Id. 312; *Allen v. Carpenter,* 15 Id. 33, 42.  If he was a tenant by sufferance, he was also entitled to three months' notice.  How. Stat. § 5774.

It is claimed by counsel for plaintiff that the wording of the clause relative to possession clearly imports that it was to continue only for the year 1888.  There might be some plausibility in this statement if there was a comma after the word "grown," as printed in counsel's brief; but with the absence of the comma, as the clause appears in the record, it simply provides that Hartman shall have all the crops "grown during the year 1888;" leaving the time of possession unlimited by the contract, as far as any express provision is concerned.

A notice to quit was certainly necessary, and, if the origin of the transaction, and the reason for executing the deed and contract of sale, be as claimed in the brief of plaintiff's counsel, it is doubtful if summary proceedings would lie to dispossess the defendant, under the authority of *Ferris v. Wilcox,* 51 Mich. 105.

The judgment must be reversed, and a new trial granted, with costs of this Court to the defendant.

The other Justices concurred.