FANNY B. LANE ET AL. v. JOHN F. RUHL.

*Landlord and tenant—Notice to quit.*

Where a tenant in possession under a lease for one year assents to
its termination, and continues to hold from day to day under
a new arrangement, which he afterwards repudiates, and claims
the right to hold for another year under the terms of the
prior lease, to which holding the landlord does not assent, he
is not entitled to notice to quit; citing *Benfey v. Congdon*, 40
Mich. 283.

Error to Wayne. (Brevoort, J.) Argued January 5,
1893. Decided January 20, 1893.

Summary proceedings to recover possession of land.
Defendant brings error. Affirmed. The facts are stated
in the opinion.

*George X. M. Collier*, for appellant, contended:

1. Though an oral lease for more than one year is void, if it
   reserves an annual rent, and the tenant has been put into
   possession under it, it will be a good lease from year to year
   until terminated by notice; citing *Morrill v. Mackman*, 24 Mich.
   279; *Huntington v. Parkhurst*, 87 Id. 38; and a tenant who
   enters into possession under a void lease becomes a tenant from
   year to year; citing *Coudert v. Cohn*, 118 N. Y. 309; and where,
   after the expiration of a parol tenancy for a year, the tenant
   remains in possession for several years under a verbal agree-
   ment that he will go when requested by the landlord, he is
   either a tenant at will or from year to year, and entitled to
   notice to quit before an action to oust him can be sustained;
   citing *Coomler v. Hefner*, 86 Ind. 108; and a tenancy without
   limitation as to time, though the rent is payable monthly, is a
   tenancy from year to year; citing *Laughran v. Smith*, 75 N.
   Y. 205; *Scully v. Murray*, 84 Mo. 420; *Coomler v. Hefner*, 86
   Ind. 108; *Rothschild v. Williamson*, 83 Id. 387; and notice to
   quit is necessary to terminate a tenancy from year to year;
   citing *Dumn v. Rothermel*, 112 Penn. St. 272; and a tenant for
   a year, holding over, is a tenant from year to year, and not a

tenant at will, but, if the latter, he is entitled to notice to quit; citing *Schneider v. Lord*, 62 Mich. 141.

2. A notice to quit must be explicit and positive; citing Taylor, Land. & Ten. § 483; and the defendant, remaining in possession after the receipt of the letter, is supposed to have assented to the new condition that he held from day to day, and is therefore entitled to notice to quit; citing *Roberts v. Hayward*, 3 Car. & P. 432; *Benfey v. Congdon*, 40 Mich. 283; and where a tenant at sufferance is allowed to continue in possession under a new arrangement, he becomes a tenant at will; citing *Ramsdell v. Maxwell*, 32 Mich. 285.

*Wells, Angell, Boynton & McMillan*, for plaintiffs.

GRANT, J. The following is an agreed statement of the case:

" The defendant, Ruhl, had been plaintiff's tenant of the store in question for a number of years. In 1883 a written lease was entered into for three years from and including May, 1883. This lease expired with April 30, 1886. No new lease was made for the next period of two years. The defendant held over upon the terms of the former lease. But during this period of two years, and before April 30, 1888, the plaintiffs and the defendant agreed upon a new lease for a further term of two years, to wit, from May 1, 1888, to and including April 30, 1890. This lease was prepared for signature, but, through some inadvertence, was not signed. The rent, payable monthly, was the same, and the other terms substantially the same, as under the lease of May, 1883. Some time before April, 1890, the defendant was informed that the plaintiffs were contemplating changes in the ground floor of the Russell House; that the hotel people desired more room; and that, in order to make the changes, it would be necessary for the plaintiffs to use the store in question, and for that reason no extension could be given him of his then present term. He was then holding for two years under the agreement for a lease for two years from May 1, 1888, for which term the written lease was prepared, but not signed, as already related. The changes were postponed for a year, and before April, 1890, the plaintiffs notified the defendant of it, and told him he could remain another year, but, as the changes would probably be made the following year, the plaintiffs could only let him remain one year more.

To this the defendant assented. In February, 1891, the defendant was informed that the improvements were going to be made in the Russell House, of which he had been told before, and that he could not occupy the store after April 30, 1891. There were one or two other conversations to the same effect between the representative of the plaintiffs and the defendant before April 30, 1891. Further, on April 29, 1891, the plaintiffs sent the defendant a letter which expressly notified him that his right to occupancy could not be extended beyond April 30, 1891, and stating that if he occupied after that date it must be upon the understanding that it was from day to day. In the early part of June, 1891, the improvements in the hotel had so far progressed that it became necessary to have possession of the store. The defendant was told so, and said, 'Very well;' that he would look up another store. A few days afterwards, he was seen again. He said he had not been able to find a store. He was told of some stores in the next block which were vacant. He said, 'Yes, but the rent is too high.' At the next interview, which was on June 18, 1891, he said he had had great difficulty in finding a place to move to, and finally declared that he had decided not to move. He was told his position was very strange, after what he had done about the matter theretofore, but he rejoined that he had had a lawsuit once which had cost him $1,400, and he knew the law, and that he knew he had the right to stay there another year, and that he was going to do it. The plaintiffs' agent offered to submit the matter to defendant's lawyer, Mr. S. S. Babcock, and they repaired to the latter's office. The case was stated to him substantially as above. There was no contradiction upon the part of the defendant, and Mr. Babcock advised that upon that statement he thought the defendant had no right to stay in. Mr. Babcock consulted further with Mr. Ruhl, and later telephoned that Ruhl still declined to go. Thereupon this suit was at once begun before a circuit court commissioner."

Defendant requested the court to charge—

1. That defendant was a tenant from year to year, and was entitled to a notice in writing, of three months, before the expiration of the year upon which he had entered.

2. That the letter was not sufficient notice to quit.

3. That, if the agreement was that the defendant might

occupy the premises from day to day, he was entitled to a notice of one month.

These requests were refused, and the court instructed the jury that under the plaintiffs' evidence no such notice was required, and that, if they found the agreement and notice to be as the evidence on behalf of the plaintiffs showed, they should find for them.

The ruling of the court was correct. This case is within the rule of *Benfey v. Congdon,* 40 Mich. 283. There was no evidence from the plaintiffs of any express or implied assent to defendant's continuation under the terms of the former lease. On the contrary, if the jury believed plaintiffs' witness,—and the verdict shows that they did,—defendant assented to the termination of the one-year lease, and continued to hold from day to day under a new arrangement. The instructions were not as clear and explicit as they might have been, but the issue was so clear that we do not think the jury could have been misled.

Judgment affirmed.

The other Justices concurred.